IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN GARBUTT and MAX DRIVE LLC, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 21-cv-628 |
| | ) Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) Re: ECF No. 6 |
| MURRAY'S FREIGHTLINER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiffs John Garbutt and Max Drive LLC[1] filed this action arising out of allegations that Defendant Murray's Freightliner violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.  ECF No. 1.  Presently before the Court is Murray's Freightliner's Motion to Dismiss.  ECF No. 6.  For the reasons below, the Motion to Dismiss is granted.[2]

### I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action in the Court of Common Pleas of Allegheny County, Pennsylvania on March 23, 2021.  ECF No. 1 ¶ 1.  Defendant Murray's Freightliner removed this action to this Court on May 12, 2021 pursuant to 28 U.S.C. §§ 1331 and 1441.

Plaintiffs John Garbutt ("Garbutt") and Max Drive LLC jointly bring this action; however, the Complaint is drafted as if brought on behalf of an individual plaintiff.  ECF No. 1-2.  Garbutt

---

[1] The parties refer to this entity as Max Driver LLC in their briefing relative to the instant Motion to Dismiss and in the Notice of Removal.  ECF Nos. 1, 6 and 9.  However, this entity is identified as Max Drive LLC in the Complaint and service records attached to the Complaint.  ECF No. 1-2 at 1, 22-30.  The Court uses the spelling in the Complaint.

[2] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  ECF Nos. 12 and 13.

and Max Drive LLC claim they are a single "adult individual citizen" residing in Mississippi, and they refer to themselves as a singular "Plaintiff" throughout the Complaint. Id. ¶ 1. As a result, it is unclear to what extent Plaintiffs are referring to either Garbutt and/or Max Drive LLC in their allegations. Consistent with the Complaint, the Court refers to a singular plaintiff in summarizing the factual allegations.

### A. Factual Allegations

According to the Complaint, "Plaintiff" purchased a 2016 Freightliner Cascadia (the "Vehicle") on or about August 7, 2015 in Pennsylvania for $175,212.09. Id. ¶¶ 3-5. Plaintiffs claim that Murray's Freightliner manufactured and warranted the Vehicle. Id. ¶ 3. In exchange for the purchase, Murray's Freightliner allegedly "issued to Plaintiff several warranties, guarantees, affirmations or undertakings with respect to the material or workmanship of the vehicle and/or remedial action in the event the vehicle fails to meet the promised specifications." Id. ¶ 6. Plaintiffs allege that the "parties' bargain" included "an extended warranty, as well as other guarantees, affirmations and undertakings as stated in Defendant's warranty materials and owner's manual." Id. ¶ 8.

An alleged copy of the purchase contract for the Vehicle is attached as Exhibit "A" to Plaintiffs' Complaint. Id. ¶ 5. However, Exhibit A is not a purchase contract dated August 7, 2015. Instead, it is a "lease purchase agreement" for a 2016 Freightliner Cascadia, dated July 15, 2019. Id. at 13-20. The agreement is between lessor Wasatch Leasing, LLC and lessee John Garbutt Jr., and it is stamped "[t]his chattel paper has been assigned to Mercedes-Benz Financial Service USA LLC or Daimler Trust . . . ." Id. Murray's Freightliner is not identified as a party to the agreement.

During the unspecified "warranty period," "Plaintiff" complained of defects or non-conformities in the Vehicle. Id. ¶ 10. On August 4, 2020, "Plaintiff" took the Vehicle to Murray's Freightliner in DuBois, Pennsylvania for service. Id. Technicians pulled the transmission to repair the clutch, which cost $7,100.00. Id.

On August 26, 2020, "Plaintiff" returned the Vehicle to Murray's Freightliner because parts that were fixed on August 4, 2020 began smoking and the Vehicle was experiencing issues going into gear.[3] Id. Technicians at Murray's Freightliner checked the Vehicle, but they did not identify any needed repairs. Id.

The next day, "Plaintiff" took the Vehicle to the next Freightliner dealership on his route, Fyda Freightliner of Youngstown, Pennsylvania, for a second opinion. Id. Technicians at this location identified and repaired leaks in the Vehicle that Murray's Freightliner had not been able to identify. Id.

On November 18, 2020, the Vehicle clutch "burst into pieces causing damage to the bell housing and transmission." Id. The Vehicle was towed to Velocity Freightliner in Flagstaff, Arizona, where it was repaired. Id.

Plaintiffs claim that technicians at Murray's Freightliner caused this damage by incorrectly installing the pilot bearing, and that they also improperly stripped the screws and used an adhesive to keep the screws in place. Id. After being notified of the damage to the Vehicle, Murray's Freightliner allegedly "falsely edited their technician's notes about the repair." Id. Plaintiffs claim they incurred damages of $71,285.00 as a result of the improperly installed parts. Id. In addition,

---

[3] Max Drive LLC is identified as the bill-to-customer and owner in service estimate and invoices that Plaintiffs have appended to the Complaint. ECF No.1-2 at 22-35.

3

they claim the Vehicle continues to "exhibit defects and nonconformities, which substantially impairs its use, value and/or safety." Id. ¶ 11.

### B. Legal Claims

Plaintiffs bring two claims. In Count I, Plaintiffs claim violations of the Magnuson-Moss Warranty Act ("MMWA"). In Count II, Plaintiffs claim violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

### C. Motion to Dismiss

Murray's Freightliner filed the instant Motion to Dismiss and Brief in Support on June 3, 2021. ECF Nos. 6 and 7. Plaintiffs filed a Response in opposition on June 28, 2021. ECF No. 9.[4] The Motion to Dismiss is ripe for consideration.

## II. LEGAL STANDARD

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Retirement Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

---

[4] The Court notes that Plaintiffs submitted this document with several filing errors, including using the wrong case number in the caption. Counsel did not comply with this Court's directive on June 29, 2021 to resubmit his filing to correct these errors.

Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

### III.     DISCUSSION

#### A. Magnuson-Moss Warranty Act (Count I)

Plaintiffs bring Count I under the MMWA. The MMWA is "a remedial statute designed to protect the purchasers of consumer goods from deceptive warranty practices." Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 331 (D.N.J. 2014) (quoting Miller v. Willow Creek Homes, Inc., 249 F.3d 629, 630 (7th Cir. 2001)). Under this statute, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, implied warranty, or service contract, may bring suit for damages and other equitable relief." 15 U.S.C. § 2310(d)(1). The MMWA only applies to claims involving "consumer products." Triad Charters, Inc. v. Viking Yacht Co., No. 88-4977, 1989 WL 21763, at *3 (D.N.J. Mar. 6, 1989).

In support of the Motion to Dismiss, Murray's Freightliner argues Count I should be dismissed for two reasons: (1) the Vehicle is a tractor-trailer, which is not a "consumer product" subject to the MMWA; and (2) Plaintiffs fail to state a claim, because they do not identify any

express warranty at issue, and they rely upon boilerplate allegations without factual support as to any alleged breach of implied warranty. ECF No. 7 at 3-5.

In response, Plaintiffs argue that their "use of the subject vehicle" qualifies it as a consumer product under the MMWA.[5] ECF No. 9 at 5-6. They contend that Garbutt registered the Vehicle under both his business and personal name, and therefore "[p]inning it as solely business use would be incorrect." Id. at 6. As to Murray's Freightliner's second argument, Plaintiffs argue they have stated a plausible claim, because there were "warrantable defects" in the product it sold, and Murray's Freightliner failed to repair the Vehicle properly.

### 1. The Vehicle is Not a Consumer Product under the MMWA

As to Murray's Freightliner's first argument, the Court agrees the Vehicle is not a consumer product subject to the MMWA. Under the MMWA, a consumer product is defined as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . ." 15 U.S.C. § 2301(1).

Here, the product at issue is a 2016 Freightliner Cascadia, which is a commercial tractor-trailer. As other courts have found, tractor-trailers are not a product that is "normally used for personal, family or household purposes." See, e.g., Ligato v. Ryder Used Vehicle Sales, Inc., No. 19-2345, 2019 WL 3202573, at *2 (E.D. Pa. July 16, 2019) (finding 2011 Freightliner Cascadia 125 was a "heavy truck," which did not qualify as a "consumer product" under the MMWA); Kwiatkowski v. Volvo Trucks N. Am., Inc., 500 F. Supp. 2d 875, 877 (N.D. Ill. 2007) ("The court agrees . . . that a commercial tractor-trailer is not ordinarily used for personal, family, or household use. The normal and ordinary purpose for such trucks is to haul trailers in transport of goods and products over long distances for commercial benefit. Such a vehicle is not a 'consumer product'

---

[5] The Court notes that Plaintiffs quote from 16 C.F.R. § 700.1(a) at length without using quotation marks or attributing the source of the authority. Counsel is reminded that proper citation to legal authority is required.

and therefore beyond the reach of the [MMWA].'"); Singtutt v. Paccar Inc., No. 1:14-cv-00134, 2015 WL 251844, at *2 (E.D. Cal. Jan. 20, 2015) ("A tractor-trailer product is generally used for commercial purposes and is not within the coverage of the [MMWA].").

Although Plaintiffs argue *they* did not use the Vehicle solely for business use, this is not the relevant inquiry.[6] As Plaintiffs acknowledge in their Response, "the use to which a product is put by any individual buyer is not determinative" of whether it is a consumer product. ECF No. 9 at 5 (quoting 16 C.F.R. § 700.1(a)).[7] Instead, the Court looks to whether products of the type or class at issue are "normally used" for consumer purposes. Ligato, 2019 WL 3202573, at *2; see also Triad Charters, Inc., 1989 WL 21763, at *4 ("[H]ow a particular buyer uses the goods is irrelevant as long as the goods are 'normally used' for consumer purposes"); Mendelson v. Country Coach, Inc., No. 06-572, 2007 WL 4812279, at *2 (C.D. Cal. Oct. 9, 2007) ("The broad policy of the [MMWA] and its regulations indicates that a 'type' or 'class' analysis of a product is the appropriate test in resolving the issue of coverage. An individual's deviation from the normal use of a particular type product will not affect its classification for purposes of the Act"). Here, Plaintiffs do not claim in their Complaint, or argue here, that the 2016 Freightliner Cascadia is the type of product which is "normally used" for consumer purposes. For these reasons, the Court finds the Vehicle is not a consumer product.

Because the MMWA applies only to warranties that pertain to consumer products and the truck at issue is not a consumer product, Plaintiffs fail to satisfy a requisite element of their claim. Accordingly, the Motion to Dismiss is granted on this basis.

---

[6] Even if this was the relevant inquiry, the Court also notes there are no allegations in Plaintiffs' Complaint indicating the Vehicle was "normally used" by Plaintiffs for personal or household use. This is particularly true as to Max Drive LLC, which is a corporate entity.

[7] Plaintiffs rely upon this quoted excerpt from the implementing regulations for the MMWA without using quote marks to identify it as a quotation or citing to its source. Counsel is reminded that legal authority must be properly cited for the Court's reference.

### 2. Plaintiffs Do Not Plead Facts Establishing a Breach of Warranty

Second, Murray's Freightliner also argues that Plaintiffs' claim should be dismissed because they do not plead any underlying breach of warranty. The MMWA provides relief for consumers harmed by breaches of implied and express warranties. A "claim under the MMWA relies on the underlying state law claim." Johansson v. Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 265 (D.N.J. 2011). "Thus, if there exists no actionable warranty claim, there can be no violation of the MMWA." Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 600–01 (D.N.J. 2016) (citing Johansson, 804 F. Supp. 2d at 265; In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., No. 96-1814, 2001 WL 1266317, at *24 (D.N.J. Sept. 30, 1997)).

Upon review, Plaintiffs do not sufficiently plead any underlying breach of warranty under state law. In order to state a claim for breach of express warranty, a plaintiff must allege: "(1) that the defendant made an affirmation of fact or description of its goods; (2) that the statement formed part of the basis of the bargain between the parties; and (3) that the product failed to conform with the affirmation or description." In re Shop-Vac Mktg. & Sales Practices Litig., 964 F. Supp. 2d 355, 362 (M.D. Pa. 2013).

In this case, Plaintiffs' Complaint lacks factual allegations to support the existence of a breach of express warranty. Although Plaintiffs vaguely aver that Murray's Freightliner issued various warranties in connection with Plaintiffs' purchase of the vehicle in 2015, they do not identify any specific affirmation or promise at issue, or the source of the express warranty. See ECF No. 1-2 ¶¶ 6-8.[8] This is insufficient to state a claim. See Kester v. Zimmer Holdings, Inc., No. 2:10-cv-00523, 2010 WL 2696467, at *10-11 (W.D. Pa. June 16, 2010); see also Schiff v.

---

[8] As Murray's Freightliner points out, the Complaint also does not reflect that Plaintiffs purchased the Vehicle from Murray's Freightliner. Although Plaintiffs purport to provide a "true and correct copy" of the purchase contract, as discussed, the only agreement attached is a lease purchase agreement dated 2019, to which Murray's Freightliner is not a party. Plaintiffs do not address this issue in their Response in opposition to the Motion to Dismiss.

Hurwitz, No. 12-cv-0264, 2012 WL 1828035, at *6 (W.D. Pa. May 18, 2012) ("Absent a demonstration that a promise or affirmative statement was made, how or by whom the promise was made, and what was in fact promised, a claim for breach of express warranty is not sufficiently plead.") (citations omitted).

Plaintiffs do not clarify in their Response. Instead, Plaintiffs argue that Murray's Freightliner did not correct "issues resulting from the malfunction of the product they sold which were covered by Murray's applicable warranty," again, without identifying the source, nature, or content of this purported warranty. ECF No. 9 at 6. Although Plaintiffs broadly refer the Court to copies of repair orders from Murray's Freightliner, the Court cannot locate any purported written warranty in those documents. To the contrary, Murray's Freightliner issued the following disclaimer of warranties:

> The undersigned purchaser understands and agrees that dealer makes no warranties of any kind, express or implied, and disclaims all warranties, including warranties of merchantability or fitness for a particular purpose . . . .

Id. at 29.

Plaintiffs also fail to plead facts in support of a claim for breach of any implied warranty. Under Pennsylvania law:

> Both the implied warranty of merchantability and the warranty of fitness for a particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose. Vlases v. Montgomery Ward & Co., 377 F.2d 846, 849 (3d Cir. 1967). In order to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." 13 Pa.C.S.A. § 2314(b)(3). The warranty of fitness for a particular purpose is more exacting. It requires that the seller had reason to know of the buyer's particular purpose at the time of contracting and that the buyer was relying on the seller's expertise. In that case, the goods are implicitly warranted to be fit for that particular purpose. 13 Pa.C.S.A. § 2315. To establish a breach of either warranty, plaintiffs must show that the equipment they purchased from defendant was defective.

Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).

Plaintiffs' Complaint is devoid of factual allegations to support either claim. In Count I, Plaintiffs claim that Murray's Freightliner failed to comply with written warranties and make reasonable repairs. As a result of Murray's Freightliner's botched repair, Plaintiffs suffered damages. Plaintiffs do not plead facts demonstrating that the Vehicle, which required some repair five years after purchase, was supplied with defects.

As to the implied warranty of fitness for a particular purpose, Plaintiffs do not plead that Murray's Freightliner sold the Vehicle—let alone that Murray's Freightliner had reason to know of Plaintiffs' anticipated use of the Vehicle and that Plaintiffs relied upon its expertise. In their Complaint, Plaintiffs claim that Murray's Freightliner "manufactured and warranted" the Vehicle, and Murray's Freightliner is not a party to the alleged purchase contract on which Plaintiffs rely. Based on this, the Court finds Plaintiffs do not plead any underlying breach of warranty claim, and therefore do not state a claim under the MMWA. As a result, the Motion to Dismiss is granted as to Count I.

### B. Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II)

Plaintiffs bring Count II under the UPTCPL. The UTPCPL is Pennsylvania's consumer protection law. Commonwealth v. Chesapeake Energy Corp., 247 A.3d 934, 936 (Pa. 2021). It was "created to even the bargaining power between consumers and sellers in commercial transactions" and prohibits "unfair or deceptive acts or practices." Id. (quoting Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC, 194 A.3d 1010, 1023 (Pa. 2018)); 73 P.S. § 201-3 (internal quotations omitted).

Under the UTPCPL, actions can be brought on behalf of the Commonwealth by the Attorney General or a District Attorney, or through a private cause of action. Chesapeake Energy

Corp., 247 A.3d at 937. To bring a private cause of action under the UTPCPL, plaintiff must show that he "(1) purchased or leased goods or services primarily for a personal, family or household purpose; (2) suffered an ascertainable loss of money or property; and (3) the loss occurred as a result of the use or employment by a person of a method, act or practice declared unlawful by the UTPCPL." Baynes v. George E. Mason Funeral Home, Inc., No. 09-153, 2011 WL 2181469, at *4 (W.D. Pa. June 2, 2011) (citing 73 P.S. § 201-9.2(a)). In support, plaintiff must offer evidence of one of the statutorily delineated "unfair methods of competition" set forth in 73 P.S. § 201-2(4), or evidence that falls under the "catch-all provision" found at 73 P.S. § 201-2(4)(xxi). Id.

In support of the Motion to Dismiss, Murray's Freightliner argues that Count II should be dismissed because Plaintiffs do not establish that they purchased or leased goods or services primarily for a personal, family or household purpose, as required to bring a private cause of action under 73 P.S. § 201-9.2(a). ECF No. 7 at 7.[9] In addition, Murray's Freightliner argues that Plaintiffs fail to state a UTPCPL claim because they do not specifically plead how Murray's Freightliner's actions or inactions allegedly violated the UTPCPL. Id. at 9-10.

In response, Plaintiffs concede that private causes of action under the UTPCPL must relate to goods purchased or leased primarily for personal, family or household purposes, and they do not claim to satisfy this requirement. ECF No. 9 at 7-8. However, they argue that the "substantive prohibitions and coverage sections" of this statute are not limited to consumers. Id. at 8. Plaintiffs

---

[9] Defendants also argued that Plaintiffs' UTPCPL claim should be dismissed because it is barred by the economic loss rule, but they have withdrawn this argument based upon the United States Court of Appeals for the Third Circuit's recent decision in Earl v. NVR, Inc., 990 F.3d 310, 314 (3d Cir. 2021). ECF No. 7 at 8; ECF No. 10.

11

assert that "many decision [sic] have recognized the UPTCPL [sic] covers business transactions," without citing to any legal authority in support. Id.

Plaintiffs also argue their UTPCPL claim is factually supported, referring the Court to allegations in their Complaint that Murray's Freightliner did not properly fix the Vehicle, and then falsely edited technicians' notes about the repair. Id. at 8-10. Plaintiffs contend that Murray's Freightliner engaged in "unfair or deceptive acts or practices" by failing to provide a product that "met the standard of goods they represented," and by making "fraudulent" and insufficient repairs. Id. at 10.

Upon review, the Motion to Dismiss is granted as to Count II. Because this is a private cause of action, Plaintiffs must show they purchased or leased goods or services at issue "primarily for personal, family or household purposes." Plaintiffs do not claim to meet this requirement with respect to the tractor-trailer at issue. Accordingly, Count II is dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF No. 6, is granted. "If a complaint is vulnerable to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. Cty of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Because the Court cannot conclude that Plaintiffs are unable to state any plausible claim arising out of the allegations in their Complaint, Plaintiffs will be permitted to amend their

Complaint, as appropriate, within 14 days.

    An Order will be entered.


Dated:  August 10, 2021                 BY THE COURT:

                                          ***/s/ Maureen P. Kelly***
                                          MAUREEN P. KELLY
                                          UNITED STATES MAGISTRATE JUDGE


cc:    All counsel of record via CM/ECF.